UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

BNP PARIBAS MORTGAGE
CORPORATION and BNP PARIBAS,

                Plaintiffs,

  - against -

BANK OF AMERICA, N.A.,

                Defendant.

------------------------------------X

DEUTSCHE BANK AG,

                Plaintiff,

  - against -

BANK OF AMERICA, N.A.,

                Defendant.

------------------------------------X

10 Civ. 8630 (RWS)

OPINION

10 Civ. 8299 (RWS)

OPINION

A P P E A R A N C E S:

      Attorneys for Plaintiffs BNP Paribas
      Mortgage Corporation and BNP Paribas

      BOIES SCHILLER & FLEXNER LLP
      333 Main Street
      Armonk, NY  10504
      By:  Robin A. Henry, Esq.
          Motty Shulman, Esq.
          Jack Wilson, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/30/11

<u>Attorneys for Plaintiff Deutsche Bank AG</u>

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
By:  William E. McDaniels, Esq.
     Thomas G. Ward, Esq.
     Stephen P. Sorensen, Esq.


<u>Attorneys for Defendant Bank of America, N.A.</u>

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560
By:  Marc T.G. Dworsky, Esq.
     Kristin Linsley Myles, Esq.
     Richard St. John, Esq.
     Sarala V. Nagala, Esq.


KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
By:  Richard T. Marooney, Esq.

**Sweet, D.J.**

In these related actions, Defendant Bank of America, N.A. ("BoA" or "Defendant") has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss complaints filed by Plaintiffs BNP Paribas Mortgage Corporation ("BNP") and Deutsche Bank AG ("DB") (collectively, "Plaintiffs"). Both actions consist of claims for conversion of mortgage loans and their proceeds that Plaintiffs allege BoA converted while serving as, among other roles, Collateral Agent for the loans, of which Plaintiffs were noteholders.

Both cases were initially filed in Florida and later transferred to the Southern District of New York, where they were related to two pending breach of contract cases, <u>Deutsche Bank AG v. Bank of America, N.A.</u>, No. 09 Civ. 9784 (RSW) ("DB I") and <u>BNP Paribas Mortgage Corp. et al. v. Bank of America, N.A.</u>, No. 09 Civ. 9783 (RSW) ("BNP I") (collectively, the "contract cases"), which arose out of the collapse of the Taylor, Bean & Whitaker Mortgage Corporation ("TBW").

For the reasons set forth below, BoA's motion to dismiss is granted with leave to replead within 30 days.

## I.   PRIOR PROCEEDINGS

In the contract actions, BNP and DB each filed initial Complaints against BoA on November 25, 2009.  Both filed Amended Complaints on March 17, 2010.[1]

In its Amended Complaint, DB asserted eight causes of action for breach of contract, alleging that BoA breached the current and prior versions of four contracts that created and governed a facility for the origination, sale, and purchase of home mortgages through TBW and its wholly-owned subsidiary, Ocala Funding, LLC ("Ocala") (the facility hereafter referred to as the "Ocala Facility").  These contracts include the Security Agreement, the Depositary Agreement, the Custodial Agreement, and the Base Indenture (collectively the "Facility Documents").  In addition to its breach of contract claims, DB asserted a claim for breach of fiduciary duty and seeks indemnification under the current and prior versions of the Depositary, Security, and Custodial Agreements.  BNP did not bring any claims under the prior versions of the Facility Documents, but otherwise echoed DB's claims, with the addition of a claim for

---

[1]    Hereafter, the Amended Complaint filed by DB in its contracts case will be referred to as the "DB I AC" and the Amended Complaint filed by BNP in its contracts case will be referred to as the "BNP I AC."

"Breach of Contract/Indemnification" under a March 27, 2009 side letter.

On April 30, 2010, BoA moved to dismiss the Amended Complaints and oral argument was heard on that motion on September 15, 2010.  On March 23, 2011, the Court granted the motions as to the claims for breach of the Depository Agreement, Custodial Agreement, and March 2009 Letter, as to the claims for indemnification, and as to the claims relating to Ocala Notes issued prior to July 20, 2009.  The Court denied BoA's motions to dismiss as to all remaining claims.

On August 30, 2010, BNP and DB filed new actions against BoA in the Southern District of Florida.[2]  On November 17, 2010, the actions were transferred to the Southern District of New York and referred to this Court.  In these, the instant actions, entitled BNP Paribas Mortgage Corp. v. Bank of America N.A., No. 10 Civ. 8630 (RSW) ("BNP II") and Deutsche Bank AG v. Bank of America N.A., No. 10 Civ. 8299 (RSW) ("DB II") (collectively, the "conversion cases"), BNP and DB allege two causes of action for conversion: the first for conversion of

---

[2]     Hereafter, the Complaint filed by DB in its conversion action will be referred to as the "DB II Compl." and the Complaint filed by BNP in its conversion case will be referred to as the "BNP II Compl."

certain mortgage loans (collectively, the "Loans") and second for conversion of the sale proceeds of those loans.

On November 23, 2010, BoA filed motions to dismiss the new actions.  Those motions were heard and marked fully submitted on January 26, 2011.

## II.  THE FACTS ALLEGED

### A.  Background

Familiarity with the general background of this case and prior litigation between the parties is assumed.  The allegations as described in contracts cases are repeated in part as relevant to the issues presented by the instant motions.

According to the instant Complaints, "[u]ntil it filed for bankruptcy on August 24, 2009, TBW was the largest non-depositary residential mortgage lender in the United States" and was "responsible for originating approximately $30 billion in new loans in 2008." (DB II Compl. ¶ 12; BNP II Compl. ¶ 12.)

4

TBW created Ocala Funding LLC ("Ocala" or the "Ocala Facility") to provide liquidity funding to TBW's mortgage origination business pending the sale of mortgages originated or purchased by TBW to the Federal Home Loan Mortgage Corporation ("Freddie Mac") and others. (DB II Compl. ¶¶ 1, 13; BNP II Compl. ¶¶ 1, 13.)  Ocala raised cash by issuing liquidity notes in two series — Series 2005-1 Secured Liquidity Notes (the "2005-1 Notes") and Series 2008-1 Secured Liquidity Notes (the "2008-1 Notes") (collectively, the "Ocala Notes").  Plaintiffs aver that BNP is the owner of all 852 of the outstanding 2005-1 Notes, which it purchased for $480.7 million, and that DB is the owner of all of the 2,126 outstanding 2008-1 Notes, purchased for over $1.2 billion. (See BNP II Compl. ¶¶ 2, 14-17; DB II Compl. ¶¶ 2, 3, 14.)  BoA served in several distinct but related capacities for the Ocala Facility: as Indenture Trustee, Collateral Agent, Depositary and Custodian.  The Loans constituted collateral backing the Notes.

The contractual rights and responsibilities of BoA, TBW, Ocala, DB and the BNP Plaintiffs with respect to the Ocala Facility are set out in the following Ocala Facility Documents: the 2008 Base Indenture; the 2008 Security Agreement; the 2005-1 Depositary Agreement (relating to the 2005-1 Notes and upon which the BNP Plaintiffs sued in its contracts case) and 2008-1

Depositary Agreement (relating to the 2008-1 Notes and upon which DB sued in its contracts case); the 2008 Custodial Agreement; and the March 2009 Letter.

In August, 2009, TBW's offices were raided by law enforcement authorities, TBW stopped originating mortgages, and Freddie Mac terminated TBW's eligibility to sell and service Freddie Mac loans.  On August 10, 2009, BoA declared an Event of Default under the Base Indenture.  In the wake of TBW's collapse, Ocala has failed to repay the money owed to DB and BNP in their capacity as holders of the Ocala Notes.

### B.    The Conversion Alleged

The instant Complaints allege that BoA, acting as Collateral Agent for the benefit of Plaintiffs, perfected its first-priority security interest in the Loans by, among other things, taking possession of them.  (DB II Compl. ¶¶ 17-18; BNP II Compl. ¶¶ 17-18.)  BoA then sent the Loans to Colonial Bank under a series of bailee letters (the "Bailee Letters").  (DB II Compl. ¶ 18; BNP II Compl. ¶ 18.)  These letters affirmed that the Loans "constitute a portion of the Assigned Collateral as defined in the Security Agreement" and that "[e]ach of the

6

Mortgage Notes, Mortgages and Assignments of Mortgages is subject to a security interest in favor of the Collateral Agent for the benefit of the Secured Parties" (i.e. BNP and DB). (DB II Compl. ¶ 19; BNP II Compl. ¶ 19.)  The Bailee Letters required that the purchase price for the Loans be wired to the Ocala Funding Collateral Account at Bank of America (No. 722493.4) and stated that "until payment therefor is received, the aforesaid security interest therein will remain in full force and effect, and you shall hold possession of such Assigned Collateral and the documentation evidencing same in trust as custodian, agent, and bailee for and on behalf of the Secured Parties."  (DB II Compl. ¶ 20; BNP II Compl. ¶ 20.)

Plaintiffs allege that despite this, the purchase price of the Loans was never sent to the Ocala Funding Collateral Account, and any sale proceeds received on the Loans were not paid to Ocala or Plaintiffs. (DB II Compl. ¶ 21; BNP II Compl. ¶ 21.)  On August 11, 2009, following the collapse of TWB, BoA, acting as collateral agent and custodian of Ocala, demanded that that Colonial Bank return the Loans. (DB II Compl. ¶ 23(a); BNP II Compl. ¶ 23(a).)  On August 12, 2009, BoA commenced an action in Southern District of Florida against Colonial Bank, Bank of America NA v. Colonial Bank, No. 09 Civ. 22384 (the "Colonial Action"), asserting BoA's ownership

7

interest in the Loans, as Collateral Agent.  (DB II Compl.
¶ 23(b); BNP II Compl. ¶ 23(b).)  On August 24, 2009, BoA
commenced a second action in the Southern District of Florida,
Bank of America NA v. Taylor, Bean & Whitaker Mort. Corp., No.
09 Civ. 22478 (the "TBW Action"), similarly asserting Ocala's
ownership interest in the Loans that they are the property of
BoA as Collateral agent for the secured parties (i.e.
Plaintiffs). (DB II Compl. ¶ 23(c); BNP II Compl. ¶ 23(c).)

     Plaintiffs allege that unbeknownst to them and despite
BoA's repeated representations that the Loans were being held by
BoA as collateral agent for the benefit of Plaintiffs and
securing Ocala's obligations to Plaintiffs under the Notes (DB
II Compl. ¶ 22; BNP II Compl. ¶ 22.), BoA entered into a
transaction to buy the Loans from TBW under an Amended and
Restated Mortgage Loan Participation Purchase and Sale Agreement
(the "Early Purchase Facility") entered into on May 4, 2009.
(DB II Compl. ¶¶ 24-25; BNP II Compl. ¶¶ 24-25.)  Plaintiffs
allege that thereafter, BoA sold "nearly all" of the Loans to
Freddie Mac and received sales proceeds for the Loans from
Freddie Mac but did not pay the Ocala Funding Collateral Account
or Plaintiffs for the Loans or otherwise send the sale proceeds
to the Collateral Account or Plaintiffs.  (DB II Compl. ¶ 26;
BNP II Compl. ¶¶ 26-27.)

8

## III. STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 235-36 (1974)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a

9

factual allegation." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

## IV.  CLAIM DUPLICATION

At the threshold, BoA argues that the conversion actions should be dismissed as duplicative and an improper effort at claim-splitting.  (BoA Mem. 1.)  According to BoA, the new claims assert injuries arising from the same failure by Ocala to pay its obligations on the same series of Notes, that Plaintiffs allege the same duties of BoA to preserve Ocala's assets under the Security Agreement, and that the damages Plaintiffs seek are a discrete subset of the damages they are demanding in the contract actions. (BoA Mem. 2.)

"As part of its general power to administer its docket, a district court may stay or dismiss a suit" where it is "duplicative of another federal court suit." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2006).  As with res judicata challenges, arguments on this ground may properly be made via a motion to dismiss. See, e.g., Vega v. Rell, No. 09 Civ. 737, 2011 WL 2471295, at *11-*12 (D.Conn. June 21, 2011); New Hyde Park Car Care Center, Inc. v. Cumberland Farms, Inc., No. 09

10

Civ. 1535, 2011 WL 2462753, at *2 (E.D.N.Y. June 17, 2011); see also Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994) ("Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)"). In considering the "complex problems" that multiple federal filings can produce, the Second Circuit has noted that there is no "rigid test" but instead that a district court is required to "consider the equities of the situation when exercising its discretion." Curtis, 226 F.3d at 138. "A court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." Id. (citations omitted).

First, BoA contends that dismissal with prejudice is appropriate because in filing the conversion actions, Plaintiffs have improperly attempted to "expand their legal rights," Id. at 140, and "set sail for the hopefully more favorable waters of another district," Semmes Motors Inc., v. Ford Motor Co., 429 F.2d 1197, 1203 (2d Cir. 1970), in order to avoid the jurisdiction of the court and effect of any adverse ruling in the contracts cases. However, there is no indication of bad faith or dilatory motive here.

11

The history of the Colonial Action is significant in this regard.  As BoA describes, Defendant "filed the Colonial Bank action in August 2009 to recover certain mortgage loans that Colonial was holding when Ocala collapsed."  (BoA Reply Mem. 7 n.4.)[3]  Plaintiffs assert that they did not "discover[] that BoA, in its individual capacity . . . had purchased" the Loans until July and August of 2010. (Pls. Opp. 5.)  At the time the conversion actions were filed in August of 2010, the Colonial Action was pending, and BoA had appeared before the Florida court in the Colonial Action and that court had considered Ocala's ownership of the mortgages at issue in this case.  Plaintiffs filed notices of related cases with the Florida court, listing the Colonial Action and contract cases, and provided this Court with copies of the Complaints and related notices from the conversion cases on August 30, 2010.  (BNP II Compl. ¶ 23 n.2; BNP II, Docket No. 5 & 13; DB II, Docket Nos. 4.)  Several weeks after Plaintiffs filed the conversion actions, BoA provided Plaintiffs with written notice of its intent to abandon the Colonial Action and have Plaintiffs take over that litigation in its stead, which Plaintiffs declined to do.  On October 13, 2010, BoA voluntarily dismissed

---

[3]     BoA's contention that Plaintiffs "instructed BoA to file the Colonial Bank action, and even wrote the first draft of the complaint" (BoA Mem. 7 n.4 (citing Decl. of Patrick L. Robson ¶ 2)) is of no moment.  Ably represented as it is, Defendant cannot plausibly contend that it was not responsible for the Colonial Action or the positions it took before that court.

the Colonial Action without prejudice and thereafter filed a

motion in the contract Actions to enjoin the conversion actions

in Florida.  The parties then jointly moved to transferred the

conversion cases to this court.  This history does not indicate

that Plaintiffs were attempting to set sail for a more favorable

judge or court in choosing to file the instant actions in

Florida.


     Second, BoA contends that the conversion cases should

be dismissed as duplicative.  The rule against duplicative

litigation is related to, but distinct from, the doctrine of res

judicata.  Curtis, 226 F.3d at 138.  The power to dismiss

duplicative suits is meant to foster judicial economy and the

"comprehensive disposition of litigation" as well as to protect

parties from the vexation of concurrent litigation over the same

subject.  See Id. (citations omitted).  In assessing duplication

between claims or actions, "the fact that the first and second

suits involved the same parties, similar legal issues, similar

facts, or essentially the same type of wrongful conduct is not

dispositive."  Maharaj v. BankAmerica Corp., 128 F.3d 94, 97 (2d

Cir. 1997).  Instead, New York's "transactional approach"

focuses on "how the facts are related in time, space, origin or

motivation; whether they form a convenient trial unit; and

whether treating them as a unit conforms to the parties'

13

expectations," in order to determine "if the actions are
grounded on the same gravamen of the wrong." Yeiser v. GMAC
Mortg. Corp., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008) (citing
Marinelli Assocs. v. Helmsley-Noyes Co., 705 N.Y.S.2d 571, 575-
76 (N.Y. App. Div. 2000)).  In so doing, courts consider
"'whether the same evidence is needed to support both claims,
and whether the facts essential to the second were present in
the first.'" Prime Mgmt. Co., Inc. v. Steinegger, 904 F.2d 811,
816 (2d Cir. 1990) (quoting N.L.R.B. v. United Technologies
Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)); accord Tucker v.
Arthur Andersen & Co., 646 F.2d 721, 727 (2d Cir. 1981);
Herendeen v. Champion Int'l Corp., 525 F.2d 130, 133-34 (2d Cir.
1975).


          Plaintiffs' conversion and contract cases do not
possess the requisite measure of identity to support dismissal.
The central transaction in the contract actions regards BoA's
contractual relationship with Plaintiffs and is defined by the
Ocala Facility Documents.  The key question in those cases is
whether BoA breached its contractual and fiduciary obligations
under those documents.  (BNP I AC ¶ 30; DB I AC ¶ 32.)  In
contrast, the core transaction in the conversion action is
whether BoA unlawfully asserted dominion and control over Ocala-
owned loans and retained those loans or the proceeds of those

14

loans for its own behalf. (BNP II Compl. ¶ 4; DB II Compl. ¶ 4.) Plaintiffs' claims, if understood to be derivative as they urge, are between Bank of America and itself (see, e.g., Pl. Opp. 3), or Bank of America and Ocala.[4]

Moreover, the conversion and contract actions arise from sets of facts that are not co-extensive with each other and which would require different discovery. The facts and discovery central to the conversion actions include: whether BoA took possession and maintained possession and a perfected first priority security interest in the Loans (while acting as collateral agent); whether BoA purchased and sold Ocala-owned loans for its own account through the Early Purchase Facility, including whether it paid Ocala in a manner that released Ocala's and BoA's (in its capacity as collateral agent) rights in the loans; whether BoA had knowledge (in its individual capacity) of Ocala's and BoA's (in its capacity as collateral agent) continued ownership, possessory and security interests in the loans; where the Converted Loans went once BoA purchased them; and for loans that BoA sold, where the proceeds went.

---

[4]     The parties differ as to their understandings of what sort of derivative suit, if pled, Plaintiffs are asserting:  Plaintiffs argue they are making derivative claims on behalf of BoA (see Pls. Opp. 23-24), while BoA alternately treats Plaintiffs' claims as derivative of Ocala or BoA's rights (see BoA Reply Mem. 1-2, 8-10) .  The Court finds, as discussed infra, that Plaintiffs have not adequately pled derivative claims as to either Ocala or BoA.

In contrast, the contract actions turn on BoA's obligations to Plaintiffs under the Ocala Facility Documents. The key factual issues in those cases involve: BoA's performance of its obligations under the Facility Documents; the documents and other communications between BoA, TBW, Colonial Bank and/or other third-parties related to the Ocala Facility; BoA's preparation and certification of the borrowing base certificates; documents tracking the flow of cash and mortgage loans through the Ocala Facility; BoA's efforts to reconcile the cash and mortgages leaving the Ocala Facility with the cash and mortgages entering the Ocala Facility; and BoA's awareness or lack thereof that Ocala was insolvent and/or whether it took the required actions under the Facility Documents to determine whether Ocala was solvent.

These pleadings, if adequately pled, are sufficient to establish conversion as an action distinct from the breach of contract claim.  In any event, for the reasons set forth _infra_, the cases are dismissed for failure to state a claim.[5]

---

[5]     To the degree Plaintiffs' current claims, as pled on behalf of themselves, implicate the same wrong litigated in the contracts cases and seek relief for the same losses under the Facility Documents, those claims are dismissed as duplicative.  It is well established that a tort claim cannot be predicated on a mere breach of contract, but may only succeed if the plaintiff alleges the violation of an independent duty.  See Hargrave v. Oki Nusery, Inc., 636 F.2d 897 (2d Cir. 1980) ("If the only interest at stake

## V.    THE INSTANT COMPLAINTS FAIL TO STATE A CLAIM FOR CONVERSION

BoA argues that Plaintiffs' conversion claims also fail to state a claim for conversion, and so should be dismissed on that basis as futile.  Defendant contends that dismissal is appropriate on two grounds:  because Plaintiffs do not allege they owned or had a right to posses the Loans at issue or because Plaintiffs' theory of derivative standing fails as a matter of law.

First, BoA argues that even if Plaintiffs could show that BoA purchased Ocala assets when it acquired participation rights in pools of loans through a separate set of transactions with TBW, the conversion claims fail because Plaintiffs do not allege that Plaintiffs ever owned or had a right to possess the Loans at issue.  (BoA Mem. 11.)[6]

---

is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort."); Wechsler v. Hunt Health Sys., Ltd, 330 F. Supp. 2d 383 (S.D.N.Y. 2004); Musicland Holding Corp. v. Wachovia Bank, N.A., 386 B.R. 428, 441 (S.D.N.Y. 2008); AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc., No. 04 Civ. 8832, 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) (collecting cases); ESI, Inc. v. Coastal Power Production, Co., 995 F. Supp. 419 (S.D.N.Y. 1998).

[6]    BoA's assertion that it purchased "participation interests" in pools of TBW loans, not the underlying loans themselves as Plaintiffs contend (BoA Mem. 11 n.1 (citing DB II AC ¶ 24; BNP II AC ¶ 24; St. John Decl., Ex. D (EPF Participation Agreement) § 8(a) & (c) at pp. 19-20)), is a question of fact not suited to resolution on a motion to dismiss.

It is an essential element of a claim for conversion under both New York and Florida law that a would-be plaintiff must either own the subject property or have a right to immediate possession of it.[7] Cruickshank & Co., Ltd. v. Sorros, 765 F.2d 20, 25 (2d Cir. 1985) (New York); Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 499 (Fla. Dist. Ct. App. 1994) (Florida); see also Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 50 (2d Cir. 1996); Petrohawk Energy Corp. v. Law Debenture Trust Co. of N.Y., No. 06 Civ. 9404, 2007 WL 211096, at *4 (S.D.N.Y. Jan. 29, 2007) ("An essential element of conversion is legal ownership or an immediate superior right of possession to a specific thing.  The Plaintiff must have ownership, possession, or control."); Global View Ltd. Venture Capital v. Great Cent. Basin Expl., L.L.C., 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) ("plaintiff must demonstrate that he has legal title or an immediate superior right of possession"); Wild v. Hayes, 68 A.D.3d 1412, 1414 (N.Y. App. Div. 2009) (plaintiff who "did not own, or have possessory rights to, the property when . . . cause[] of action accrued" lacked standing to sue for conversion); Edwards v. Landsman, 51

---

[7]    The parties are in agreement that with regard to this issue Florida and New York law are the same and that choice of law need not be decided on this motion.

18

So. 3d 1208, 1213 (Fla. App. 4 Dist., 2011) (same under Florida law).

Defendants are correct that Plaintiffs' Complaints do not allege that they own or have a right to possess the loans; rather, they assert that they hold Notes issued by Ocala that were secured by Ocala's mortgage loans and other assets. (DB II Compl. ¶ 2; BNP II Compl. ¶ 2.) Plaintiffs characterize their interest in the underlying Loans as "beneficial" and state that the Loans were owned by Ocala, and that BoA held a security interest in those loans as Collateral Agent for the benefit of the Noteholders. (DB II Compl. ¶¶ 2, 4, 7, 15-17, 23; BNP II Compl. ¶¶ 2, 4, 15-17, 23.)  Indeed, Plaintiffs do not assert that they state a claim for conversion based upon their own ownership or immediate right to possession of the Loans. (Pl. Opp. 20 ("Plaintiffs' conversion claims are not based upon their purported ownership of the Converted Loans.").)  As such, a direct conversion claim would fail on this ground.  See, e.g., Old Republic Nat'l Title Ins. Co. v. Cardinal Abstract Corp., 790 N.Y.S.2d 143, 145 (2005).

Plaintiffs argue that the conversion claims pled are not based upon their own purported ownership of the Loans, however, but instead that they seek to enforce the possessory

19

rights that BoA held and holds in its capacity as collateral
agent for the benefit of the Plaintiffs.  (Pls. Opp. 20-24).
The Complaints allege that BoA exercised dominion and control
over the Loans and sales proceeds thereof (BNP II Comp. ¶¶ 31-
33, 37-39; DB II Compl. ¶¶ 29-32, 35-38).  Plaintiffs contend
that they seek relief "in [their] own right and in the stead of
Bank of America, as collateral agent for the benefit of [the
Plaintiffs and "demand[] judgment in [Plaintiffs'] favor against
Bank of America." (BNP II Compl. 10; DB II Compl. 8.)

     The question before the Court, then, is whether
Plaintiffs have adequately pled conversion claims in what
Plaintiffs describe as a derivative capacity.

     BoA asserts that Plaintiffs' theory of derivative
standing fails on two grounds: First, Defendants argue that
Plaintiffs are not in fact suing derivatively, that is, to
recover assets or funds to be paid to Ocala or Bank of America
in its capacity as Collateral Agent.  Second, Defendants assert
that even if Plaintiffs purported to seek recovery on behalf of
Ocala, their claim would fail because no relevant contract or
legal authority authorizes them to do so.

Plaintiffs respond they have adequately pled that they seek to enforce the possessory rights that BoA held and holds in the Loans in its capacity as collateral agent (Pls. Opp. 20.), and that Plaintiffs have standing to sue derivatively where BoA would otherwise be required to "sue itself" (Pls. Opp. 23).  For this proposition, Plaintiffs rely on cases involving shareholder derivative actions, the cestuis qui trustent doctrine, and cases analogous to them or applying their underlying principles.

The cases cited by Plaintiffs involve derivative claims in which a beneficiary steps into the shoes of another and seeks a remedy, not for itself, but on the other's behalf. See Riviera Cong. Assocs. v. Yassky, 18 N.Y.2d 540, 547 (1966) (limited partners may bring derivative suits on behalf of the partnership); Koral v. Savory, Inc., 276 N.Y. 215 (1937) (allowing shareholder derivative action); Caprer v. Nussbaum, 36 A.D.3d 176, 189 (N.Y. App. Div. 2006) (permitting condominium unit owners to sue on behalf of the condominium); Velez v. Feinstein, 451 N.Y.S.2d 110, 115 (App. Div. 1982) (permitting beneficiary to bring suit on behalf of the trust).

Courts have repeatedly held that the substantive right in a stockholder's derivative suit is that of the corporation, and not that of the stockholders.  See Ross v. Bernhard, 396

21

U.S. 531, 538-39 (1970); Koster v. Lumbermens Mut. Cas. Co., 330

U.S. 518, 522-23 (1947); Phillips v. Tobin, 548 F.2d 408, 411

(2d Cir. 1976); Vincel v. White Motor Corp., 521 F.2d 1113, 1118

(2d Cir. 1975); Papilsky v. Berndt, 466 F.2d 251, 255-56 (2d

Cir. 1972).  As the Second Circuit has explained:

> A stockholder's derivative action . . . consists
> of only one claim—the corporate claim against the
> alleged wrongdoers.  The alleged injury inflicted
> upon the corporation is regarded as affecting
> only the corporation.  The fact that the injury
> may indirectly harm a stockholder by diminishing
> the value of his corporate shares does not bestow
> upon him a right to sue on his own behalf to
> recover damages.

Papilsky, 466 F.2d at 255.  In shareholder derivative actions it

is the corporation, not the shareholders who bring suit, that

recovers.  The shareholder derivative case to which Plaintiffs

point, Koral v. Savory, Inc., 276 N.Y. 215, notes that the

plaintiff complained of "alleged wrongs done to the corporation

and he asks that the damages for such wrongs be paid to the

corporation to its receiver."  Id. at 217.


Likewise, the cestui que trust doctrine permits a

trust beneficiary to assert claims on behalf of the trust when

the trustee fails or refuses to do so. See Velez, 87 A.D.2d at

314 ("Where a claim exists in favor of the trust (properly

speaking, of the trustees in their trust capacity) against third

22

persons and the trustees are under a duty to enforce that claim
and have improperly and unjustifiably failed to do so, the
beneficiaries may bring a suit on behalf of the trust, analogous
to stockholders' derivative suits on behalf of a corporation.").[8]
Plaintiffs further point to Caprer, a case holding that
condominium owners may in some instances sue derivatively on the
condominium's behalf.  Caprer, 36 A.D.3d 176.  In that case, the
court permitted the plaintiffs to sue for recovery to the
condominium, but found that they lacked standing to assert
individual claims. 36 A.D.3d at 182-86.  Similarly, in Riviera,
the court extended the cestui que trust doctrine to limited
partners, and the plaintiffs were permitted to sue on behalf of
the partnership for recovery to it.  Riviera, 18 N.Y.2d at 547.

Plaintiffs' conversion Complaints state that they seek
judgment in their favor.  (BNP II Compl. 10; DB II Compl. 8.)
They are not in fact suing derivatively, but seek recovery to
themselves.  This point is confirmed by Plaintiffs' concession
that the proposed recovery here would overlap with the damages

---

[8]     Under the cestui que trust doctrine, plaintiffs must generally plead
demand and refusal or excuse for not making such demand.  See Velez, 87
A.D.2d at 315 ("In an action brought by a beneficiary on behalf of the trust,
the beneficiary must show why he had the right to exercise the power . . . to
bring a suit on behalf of the trust.  This will normally require either a
showing of a demand on the trustees to bring the suit, and of a refusal so
unjustifiable as to constitute an abuse of that trustee's discretion, or a
showing that suit should be brought and that because of the trustees'
conflict of interest, or some other reason, it is futile to make such a
demand.").

sought in the 2009 actions (Pls. Opp. at 16), where Plaintiffs are plainly suing for their own losses.

In sum, although the Plaintiffs call their conversion cases "derivative," Plaintiffs are not in fact suing for the benefit of any other entity, but instead for their own losses. Their claims are not derivative and, as such, the analogy to derivative claims, in which a party may pursue a claim belonging to someone else, does not apply here.

Plaintiffs additionally point to Independent Wireless Telegraph Company v. Radio Corporation of America, 269 U.S. 459 (1926) and Manning v. Miller Music Corporation, 174 F. Supp. 192 (S.D.N.Y. 1959) in support of their derivative theory.

In Independent Wireless, the Supreme Court recognized the right of an exclusive licensee to join the patent-owner as a co-plaintiff in an infringement action, when the latter declines to join suit against a third-party infringer.   269 U.S. at 467-75.   In Manning, the court permitted composers to bring a claim for copyright infringement against a third party where the publisher and copyright proprietor refused to do so.   To the

24

extent Independent Wireless[9] or Manning upheld the licensee's or composers' rights in themselves to sue third party infringers, both cases are distinguishable here. Both Independent Wireless and Manning involved suites, respectively, under the patent and copyright acts, and the Courts in both cases noted the unique relationship between an exclusive licensee and a patent owner, Independent Wireless, 269 U.S. at 467-71, and between a composer and a copyright proprietor, Manning, 174 F. Supp at 195-96 (noting "the peculiar relationship between the author and his publisher"). Plaintiffs have pointed to no authority supporting the proposition that bearers of commercial paper, such as themselves, may bring suits for conversion against a collateral agent who allegedly converts the collateral in issue. Because Plaintiffs possess contracts claims against BoA, they are not without redress, as the Court noted in dicta in Independent Wireless a licensee would be were a patentee to be an infringer. See 269 U.S. 467-68.

---

[9]     In Independent Wireless the Court found that were the patent owner not joined as a plaintiff, the action would not be maintainable under the patent laws "but only an action in equity, based on the contract rights of the licensee under the license and a stranger's violation of them." 269 U.S. at 466.  Accordingly, the court recognized "that there is a tendency in courts of equity to enjoin the violation of contract rights which are invaded by strangers in a direct action by the party injured, instead of compelling a roundabout resort to a remedy through the covenant, express or implied, of the other contracting party. But such a short cut, however desirable, is not possible in a case like this." Id.  Here, however, there is no third party, only the contracting parties, and a suit between them is not roundabout but ongoing in the contracts cases.

More fundamentally, in so far as Plaintiffs rely on these cases for the proposition that Plaintiffs possess a direct conversion claim against BoA, these claims are barred as duplicative of the contract cases, see Hargrave, 636 F.2d 897; Wechsler, 330 F. Supp. 2d 383, Musicland Holding, 386 B.R. 428, 441, AD Rendon, 2007 WL 2962591; ESI, Inc., 995 F. Supp. 419, and for failure to state a claim, as Plaintiffs have not pled that they own or have a right to immediate possession of the Loans. See, Old Republic, 790 N.Y.S.2d at 145.

Finally, BoA asserts that even if Plaintiffs purported to seek recovery derivatively, their claim would fail because no relevant contract or legal authority authorizes them to do so. The Court declines to reach this issue because Plaintiffs have not pled a derivative action.

## VI.   CONCLUSION

Based upon the foregoing, BoA's motion to dismiss is granted with leave to replead within 30 days.

It is so ordered.

New York, NY
August 25, 2011

ROBERT W. SWEET
U.S.D.J.

27